## YORK et al. v. HARGREAVES.

(Circuit Court of Appeals, Eighth Circuit. September 28, 1915.)

### No. 4416.

VENDOR AND PURCHASER ⟐244—BONA FIDE PURCHASER—UNRECORDED DEED.
    Evidence *held* to support a finding by the trial court that persons who procured a quitclaim deed to an interest in ore land were acting as agents for defendant, to whom they immediately conveyed, that they had knowledge that their grantor had previously conveyed a part of his interest

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in the land to complainant by a deed which had not been recorded, and that defendant therefore took subject to such deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. ☜244.]

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit in equity by F. W. Hargreaves against L. D. York and others. Decree for complainant, and defendants appeal. Affirmed.

Oscar Mitchell, of Duluth, Minn. (Washburn, Bailey & Mitchell, of Duluth, Minn., and Milner, Miller & Searl, of Portsmouth, Ohio, on the brief), for appellants.

H. C. Fulton, of Duluth, Minn. (Fryberger, Fulton & Spear, of Duluth, Minn., on the brief), for appellee.

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

ADAMS, Circuit Judge. In 1904, William Rock was the owner of a five thirty-seconds equitable interest in the S. E. ¼ of the S. E. ¼ of section 2 in township 46 N., of range 29 W., in Crow Wing county, Minn. The legal title stood in the name of one Brown, but was subsequently transferred to the defendant the Hutchins Iron & Ore Company, the present holder. On December 21, 1904, Rock conveyed by a deed duly executed by him one-half of his interest, or five sixty-fourths thereof, to the plaintiff below, F. W. Hargreaves. This deed, for reasons unnecessary to be explained, was not filed in the office of the register of deeds of Crow Wing county until February 2, 1910. On the 16th day of December, 1909, Rock conveyed by quitclaim deed, which was duly filed for record in the register's office of Crow Wing county on the 17th day of December, 1909, his entire interest in the land to Edward J. Daehler, who afterwards, and on the 20th day of December, conveyed the same to the defendant L. D. York.

The purpose of this suit was to quiet Hargreaves' title to five sixty-fourths of this land, evidenced by his prior, but unrecorded, deed from Rock, as against York's title, evidenced by his recorded deed from Rock to Daehler, his immediate grantor, and to secure a decree compelling the defendant the Hutchins Iron & Ore Company, holder of the legal title, to convey the same to him.

Which has the better title, Hargreaves or York? The statutes of Minnesota provide that every conveyance of real estate shall be recorded in the office of the register of deeds of the county where such real estate is situated, and that every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration. Section 6844, G. S. Minn. 1913.

No contention is made that Daehler was not a subsequent purchaser within the meaning of the statute, or that his deed was not first recorded, or that he did not pay a valuable consideration for it. Hargreaves claims that Daehler was not a purchaser in good faith, but took a deed

from Rock with knowledge of his prior deed. The trial court so found, and counsel for appellant York say:

"If this finding is sustained by the evidence, then, of course, the Hargreaves deed was valid as to Daehler."

In this way the present case is reduced to a single question of fact. Did Daehler know of the Hargreaves deed when he took his conveyance from Rock? The following facts are substantially uncontroverted:

Daehler was a lawyer residing in Portsmouth, Ohio, and a long-time friend of L. D. York. Raymond York was a son of L. D. York, and he and his father both resided in Portsmouth, Ohio. The Hutchins Iron & Ore Company was a corporation of Ohio, with its chief place of business in Portsmouth, and this company, besides holding the legal title to the land in question, was the equitable owner of a large interest in it. L. D. York was a stockholder and director of this company. The land in question was valuable chiefly for its iron ore prospects. Rock resided in Duluth, Minn.

Some time before December 15, 1909, York, Sr., York, Jr., and Daehler, knowing that Rock owned an interest in the land, had some interviews looking towards securing that interest. What these interviews were does not clearly appear, but it does appear that on or about December 15, 1909, following such interviews, Daehler and young York left Portsmouth for Duluth, the home city of William Rock, for the purpose of acquiring his interest in the land. On December 16th they found Rock and secured a quitclaim deed from him conveying his entire interest in the land to Daehler for a consideration considerably below its actual value. Although the deed was taken in the name of Daehler, the testimony is uncontradicted that Raymond York was jointly interested with him in the purchase. After recording their deed in in the office of the register of deeds of Crow Wing county they returned to Portsmouth, and on December 20th Daehler executed a quitclaim deed conveying the land, for the consideration of "one dollar and other valuable considerations," as expressed in the deed, to defendant L. D. York, who later caused it to be recorded in the office of the register of deeds of Crow Wing county, Minn. There is testimony that L. D. York paid Daehler and Raymond York $5,000 for the conveyance.

From testimony disclosing these and other facts, and from much contradictory evidence as to minor and incidental matters, the trial judge found that Daehler and Raymond York secured their deed from Rock for the defendant L. D. York and for his use and benefit, and that both Daehler and L. D. York took their titles with knowledge of Hargreaves' deed, and a decree was accordingly entered for the complainant. In an opinion handed down at the time of entering this decree the trial judge said:

"The evidence, taken as a whole, in view of all the facts and circumstances indicated thereby, and of the relation between the elder and younger York and Daehler, and of the conduct of Daehler and young York, and of the giving of the deed to the elder York immediately upon his return to Ohio, expressing as it does only a consideration of $1 and other valuable considerations, and in no way indicating that so large a consideration as $5,000 in money had been paid to him by the elder York, and of the letter from the

elder York to Jamison, indicating that he was fully informed in the matter and had the deed from Rock to Daehler then in his possession, indicates to my mind that Daehler and young York were in possession of the information which the elder York had, and, indeed, that they came to Minnesota to procure the Rock interest or right, such as it might be, for the elder York, and at his instigation, and were therefore in that matter acting as his agents. That being the case, the deed to Daehler was really a deed to the elder York, and, if the latter had notice of the Hargreaves deed, would give no superior right over the Hargreaves deed. That the elder York had notice of the Hargreaves deed I have no doubt."

So it appears that the trial court, after full consideration of the evidence, distinctly and unequivocally found two facts: (1) That Daehler and young York acted for and as agents of the elder York in procuring Rock's conveyance; and (2) that the elder York had knowledge of the existence of Hargreaves' deed at the time.

Counsel for appellant concede in their brief that there was evidence to support the finding that York had the knowledge, but denied the sufficiency of that evidence to establish the fact. They strenuously deny that there was any evidence to support the finding that Daehler and young York acted as agents for the elder York in procuring the Rock deed. Assuming for the moment that there was substantial evidence of the existence of the agency, we might under familiar principles of law rest our conclusion upon the presumption that the learned trial court which tried the case reached a correct conclusion on the issues of fact involved; but in deference to the earnest and able contention of counsel for appellant that the court reached an erroneous conclusion as to those facts we have carefully and critically read and examined all the proof in the case, and have unanimously reached the same conclusion on both these issues as the trial court did. The acts and conduct of parties, judged in the light of their relationship to each other and their interest in the subject-matter of the controversy, often speak louder than words. In this case we think this is conspicuously true. We cannot escape the conclusion that the project of securing the Rock title was devised and executed for the use and benefit of the elder York. The hasty trip to Duluth, following conferences between the elder and younger York and Daehler on the general subject of procuring the Rock interest, the adoption of a fictitious name by young York, which the evidence discloses, the expeditous securing of the deed from Rock, and recording it in the office of the register of deeds, the rapid return to Portsmouth, the immediate delivery of the deed so secured to the elder York, and the simultaneous execution of a quitclaim to him, are so entirely consistent with the conclusion reached by the trial judge that we cannot say there is no substantial evidence to support his findings. On the contrary, we are unanimously of the opinion, irrespective of the presumption arising from the trial court's conclusion, that both findings of fact were right, and necessarily the merits of the case are with the complainant.

Some contention is made that the deed from Rock to Hargreaves of December 21, 1904, was never in fact delivered to him, but was intended for some other purpose than as a grant of an interest in the land in controversy to him; but this contention was practically abandoned at the argument, and, if it were not, the possession of the deed by Har-

greaves and the other evidence on this point satisfy us that there is no merit in this contention.

The decree of the District Court is affirmed.

⊗═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes